ORIGINAL

APPROVED: _____
DAVID W. DENTON, JR. / SAMUEL ADELSBERG
Assistant United States Attorneys

BEFORE:  THE HONORABLE SARAH NETBURN
United States Magistrate Judge
Southern District of New York

**21 MAG 4269**

- - - - - - - - - - - - - - - - - - - X
                                       :  **SEALED COMPLAINT**
UNITED STATES OF AMERICA               :
                                       :  Violations of
          - v. -                       :  18 U.S.C. §§ 1203,
                                       :  2332a, 2339A.
BASHIR YARE,                           :
    a/k/a "Bashir Abdullahi Yare,"     :
    a/k/a "Bashir Abdi Yare,"          :
    a/k/a "Bashko,"                    :
    a/k/a "Bashir Hassan Kulmiye,"     :
    a/k/a "Bashir Hasan Kulmiye,"      :
                                       :
               Defendant.              :
                                       :
- - - - - - - - - - - - - - - - - - - X

STATE OF NEW YORK           )
COUNTY OF NEW YORK          : ss.:
SOUTHERN DISTRICT OF NEW YORK )

AMANDA MEYER, being duly sworn, deposes and says that she is a Special Agent of the Federal Bureau of Investigation ("FBI"), and charges as follows:

### COUNT ONE

### (Conspiracy to Provide Material Support for Acts of Terrorism)

1. From at least in or about January 2012 through in or about September 2014, in an offense begun and committed in Somalia and elsewhere out of the jurisdiction of any particular State or district of the United States, BASHIR YARE, a/k/a "Bashir Abdullahi Yare," a/k/a "Bashir Abdi Yare," a/k/a "Bashko," a/k/a "Bashir Hassan Kulmiye," a/k/a "Bashir Hasan Kulmiye," the defendant, and others known and unknown, at least one of whom is expected to be first brought to and arrested in the Southern District of New York, knowingly and intentionally

combined, conspired, confederated, and agreed together and with each other to provide "material support or resources," as that term is defined in Title 18, United States Code, Section 2339A(b), namely, property, services, lodging, safehouses, weapons, and personnel (including himself), knowing and intending that they were to be used in preparation for and in carrying out one or more of the following violations of Title 18, United States Code: (a) taking hostage a national of the United States, in violation of Title 18, United States Code, Section 1203(a); and (b) threatening to use a weapon of mass destruction, to wit, a destructive device, against a national of the United States, in violation of Title 18, United States Code, Section 2332a(a).

(Title 18, United States Code, Sections 2339A and 3238.)

## COUNT TWO

### (Provision of Material Support for Acts of Terrorism)

2. From at least in or about January 2012 through in or about September 2014, in an offense begun and committed in Somalia and elsewhere out of the jurisdiction of any particular State or district of the United States, BASHIR YARE, a/k/a "Bashir Abdullahi Yare," a/k/a "Bashir Abdi Yare," a/k/a "Bashko," a/k/a "Bashir Hassan Kulmiye," a/k/a "Bashir Hasan Kulmiye," the defendant, and others known and unknown, at least one of whom is expected to be first brought to and arrested in the Southern District of New York, knowingly and intentionally provided and attempted to provide "material support or resources," as that term is defined in Title 18, United States Code, Section 2339A(b), namely, property, services, lodging, safehouses, weapons, and personnel (including himself), knowing and intending that they were to be used in preparation for and in carrying out one or more of the following violations of Title 18, United States Code: (a) taking hostage a national of the United States, in violation of Title 18, United States Code, Section 1203(a); and (b) threatening to use a weapon of mass destruction, to wit, a destructive device, against a national of the United States, and aided and abetted the same, in violation of Title 18, United States Code, Section 2332a(a).

(Title 18, United States Code, Sections 2339A, 2, and 3238.)

## COUNT THREE

### (Hostage-Taking Conspiracy)

3.  From at least in or about January 2012 through in or about September 2014, in an offense begun and committed in Somalia and elsewhere out of the jurisdiction of any particular State or district of the United States, BASHIR YARE, a/k/a "Bashir Abdullahi Yare," a/k/a "Bashir Abdi Yare," a/k/a "Bashko," a/k/a "Bashir Hassan Kulmiye," a/k/a "Bashir Hasan Kulmiye," the defendant, and others known and unknown, at least one of whom is expected to be first brought to and arrested in the Southern District of New York, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other to seize, detain, and threaten to kill, injure, and continue to detain another person, namely, a national of the United States ("U.S. Victim-1"), in order to compel a third person and a governmental organization to do and abstain from doing an act as an explicit and implicit condition for the release of the person detained, to wit, YARE conspired with others to abduct, hold hostage, and threaten to kill, injure, and continue to detain U.S. Victim-1 in order to compel family members of U.S. Victim-1 and the governments of the United States and another country to pay a ransom.

(Title 18, United States Code, Sections 1203(a), 1203(b)(1), and 3238.)

## COUNT FOUR

### (Hostage-Taking)

4.  From at least in or about January 2012 through in or about September 2014, in an offense begun and committed in Somalia and elsewhere out of the jurisdiction of any particular State or district of the United States, BASHIR YARE, a/k/a "Bashir Abdullahi Yare," a/k/a "Bashir Abdi Yare," a/k/a "Bashko," a/k/a "Bashir Hassan Kulmiye," a/k/a "Bashir Hasan Kulmiye," the defendant, and others known and unknown, at least one of whom is expected to be first brought to and arrested in the Southern District of New York, knowingly and intentionally seized, detained, and threatened to kill, injure, and continue to detain another person, namely, U.S. Victim-1, and aided and abetted the same, in order to compel a third person and a governmental organization to do and abstain from doing an act as an explicit and implicit condition for the release of the person

detained, to wit, YARE and others abducted, held hostage, and threatened to kill, injure, and continue to detain U.S. Victim-1 in order to compel family members of U.S. Victim-1 and the governments of the United States and another country to pay a ransom.

(Title 18, United States Code, Sections 1203(a), 1203(b)(1), 2, and 3238.)

## COUNT FIVE

**(Threatening a U.S. National with a Weapon of Mass Destruction)**

5. From at least in or about January 2012 through in or about September 2014, in an offense begun and committed in Somalia and elsewhere out of the jurisdiction of any particular State or district of the United States, BASHIR YARE, a/k/a "Bashir Abdullahi Yare," a/k/a "Bashir Abdi Yare," a/k/a "Bashko," a/k/a "Bashir Hassan Kulmiye," a/k/a "Bashir Hasan Kulmiye," the defendant, and others known and unknown, at least one of whom is expected to be first brought to and arrested in the Southern District of New York, knowingly and intentionally and without lawful authority threatened to use a weapon of mass destruction against a national of the United States while such national was outside of the United States, and aided and abetted the same, to wit, YARE and others threatened U.S. Victim-1 with rifle-mounted grenades and grenade launchers while U.S. Victim-1 was being held hostage in Somalia.

(Title 18, United States Code, Sections 2332a(a), 2, and 3238.)

The bases for my knowledge and the foregoing charges are as follows:

6. I am a Special Agent with the FBI, assigned to the FBI's New York Field Office's squad responsible for investigating violent crimes against Americans overseas. I have been employed by the FBI for approximately six years. Based on my training and experience, I have become knowledgeable about criminal activity, particularly violations of the federal statutes criminalizing violent acts towards Americans abroad. I have been personally involved in the investigation of this matter. This affidavit is based upon my conversations with other law enforcement officers and other individuals, and upon my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of

establishing probable cause for the offenses cited above, it does not include all the facts that I have learned during the course of the investigation. Where the contents of conversations with others and statements by others are reported herein, they are reported in substance and in part, except where otherwise indicated. Some of the information recounted below is based on draft translations of statements written in Somali, which are subject to revision, and in some cases, I have indicated my interpretation of certain words or phrases in brackets, which interpretations are based on the context in which they appear as well as, among other things, my training and experience. Finally, to the extent there are grammatical, typographical, or spelling errors in any quotations in this affidavit, those errors appear in the original quoted material.

## I.  OVERVIEW OF U.S. VICTIM-1'S CAPTIVITY

7. Based on my review of reports of interviews with U.S. Victim-1 and other witnesses, and review of official records, I have learned, among other things, that U.S. Victim-1 is a dual citizen of the United States and another country ("Country-1").

8. On or about January 21, 2012, in the vicinity of Galkayo, Somalia, a group of heavily-armed men carrying what appeared to be AK-47 assault rifles and other weapons, including a rocket-propelled grenade launcher, surrounded U.S. Victim-1, who was in a vehicle at the time. U.S. Victim-1 was pulled out of his/her vehicle by some of the men and was struck by one or more of the firearms being carried by the men, causing injuries to U.S. Victim-1's head and wrist.

9. Following his/her capture, U.S. Victim-1 was taken to a different area in Somalia where he/she was held in various locations along with two hostages from a foreign nation ("Foreign Victim-1" and "Foreign Victim-2"; collectively, the "Foreign Victims"), who had been abducted from a fishing vessel off the coast of Somalia in or about October 2011.

10. During the time period when U.S. Victim-1 and Foreign Victim-1 were held in captivity, including the time period from in or about January 2012 through in or about May 2012, they were typically guarded by approximately 10 men, all of whom were armed with what appeared to be AK-47 assault rifles and some of whom had belt-fed machineguns.

11. During U.S. Victim-1's captivity from in or about January 2012 through in or about September 2014, numerous ransom calls/proof-of-life calls were placed to a family member of U.S. Victim-1 in the United States (the "Family Member"), which were consensually recorded by the FBI. In addition, several proof-of-life videos showing U.S. Victim-1 speaking on camera were obtained by the FBI. During many of these calls and videos, U.S. Victim-1 relayed the kidnappers' ransom demands to the Family Member. Some of these calls and videos are summarized below:

a. On or about January 30, 2012, the Family Member received a ransom call, during which U.S. Victim-1 told the Family Member, among other things, that he/she was in Somalia, that the people holding him/her were demanding $20 million for his/her release, and that if they did not receive the money within 24 hours, they would stop providing food and water to U.S. Victim-1. U.S. Victim-1 also stated that any action by the United States military would be held against him/her.

b. On or about February 26, 2012, the Family Member received a ransom call, during which U.S. Victim-1, among other things, relayed a demand by the kidnappers for a letter signed by a high-ranking U.S government official (the "U.S. Government Official") absolving them of any consequences for the kidnapping, and that without the letter, there would be no progress in the negotiations.

c. On or about March 15, 2012, the Family Member received a ransom call, during which U.S. Victim-1 stated, among other things, that an individual named "Mohamed" was the "negotiator" and that "Mohamed" was upset that no one had contacted him about the letter from the U.S. Government Official. U.S. Victim-1 further stated that "Mohamed" needed the letter "immediately" and if he did not receive it, he would not take responsibility for any harm to U.S. Victim-1 that might result. U.S. Victim-1 further stated that the letter should say that "Mohamed" is the negotiator for U.S. Victim-1, and that the kidnappers would be forgiven by the U.S. Government. U.S. Victim-1 also reiterated the demand for the ransom payment.

d. On or about March 16, 2012, the Family Member received a ransom call, during which U.S. Victim-1 provided the Family Member with an e-mail address where the letter from the U.S. Government Official should be sent and

which should be used for future negotiations. U.S. Victim-1 further stated that the letter would enable "Mohamed" to be the negotiator on behalf of two different groups involved in the kidnapping.

        e. On or about May 8, 2012, the Family Member received two ransom calls, during which U.S. Victim-1 stated, among other things, that the kidnappers had "just made a video" and were demanding the full $20 million ransom. U.S. Victim-1 further stated that things had "gotten very serious" and that "another hostage" had been "beaten very severely." U.S. Victim-1 reiterated to the Family Member in a foreign language that they both speak that the kidnappers had "tortured a hostage today, right in front of [him/her]." U.S. Victim-1 then stated that the threat was "very real" and that if the kidnappers did not get an answer in three days regarding their ransom demand, he/she would be "in a lot of trouble" and they would sell him/her to al Shabaab, which I know to be a terrorist group operating in Somalia, among other places.

        f. On or about May 20, 2012, the kidnappers released a proof-of-life video of U.S. Victim-1. The video depicts U.S. Victim-1 in an undisclosed location with a prayer shawl draped over his/her head and surrounded by masked, armed kidnappers. One of the kidnappers appears to be holding a belt-fed automatic machinegun and another appears to be holding a rocket-propelled grenade launcher, both of which are pointed at U.S. Victim-1 throughout the video. During the video, U.S. Victim-1 stated, among other things, that the kidnappers were demanding that the governments of the United States and Country-1 pay the full ransom within three days or the kidnappers would "sell [him/her] to al Shabaab."

## II. THE DEFENDANT'S PARTICIPATION IN U.S. VICTIM-1'S CAPTIVITY

    12. Based on my review of records of interviews with U.S. Victim-1, I have learned, among other things, that:

        a. After U.S. Victim-1 was released, FBI agents showed U.S. Victim-1 a sequential series of over 100 photographs. U.S. Victim-1 identified a known photograph of BASHIR YARE, a/k/a "Bashir Abdullahi Yare," a/k/a "Bashir Abdi Yare," a/k/a "Bashko," a/k/a "Bashir Hassan Kulmiye," a/k/a "Bashir Hasan Kulmiye," the defendant, as the individual that U.S. Victim-1 knew by the name "Bashko." U.S. Victim-1 described YARE as a consistent presence throughout his/her

captivity who was responsible for guarding U.S. Victim-1 and for transporting him/her between various locations in Somalia where U.S. Victim-1 was held during his/her captivity.

    b. In or about September 2013, YARE accompanied U.S. Victim-1 into an unpopulated or "bush" area where U.S. Victim-1 was directed to make a proof-of-life video and take photographs (the "September 2013 Video").

    c. U.S. Victim-1 was shown still images from the September 2013 Video, and identified YARE as one of the guards visible in the images wearing a red/orange shirt and a white and brown head covering. In the images, YARE is holding what appears to be an M-79-style 40-millimeter grenade launcher. Another guard can be seen holding an AK-47-style assault rifle with an antitank grenade mounted on the end of the barrel. Two other guards are holding what appear to be belt-fed PKM-style machineguns. Other guards are visible holding AK-47-style assault rifles.

    d. In or about November 2013, YARE again took U.S. Victim-1 out into the bush near where U.S. Victim-1 was being held to make a proof-of-life video (the "November 2013 Video").

    e. U.S. Victim-1 was shown still images from the November 2013 Video, and identified YARE as one of the guards visible in the images standing near U.S. Victim-1 wearing a dark shirt. In the images, YARE can be seen wearing what appear to be bandoliers of rifle ammunition of the type that would be used in a belt-fed machinegun.

    f. In or about July 2014, YARE once more took U.S. Victim-1 out into the bush near where U.S. Victim-1 was being held to make a proof-of-life video.

    g. In or about September 2014, U.S. Victim-1 was told by his/her captors that the ransom had been paid and U.S. Victim-1 was to be released. U.S. Victim-1 observed some of the ransom payment in $100 bills that had been sealed in clear plastic. YARE was among the guards present when U.S. Victim-1 observed the ransom payment.

    13. Following U.S. Victim-1's release in September 2014, U.S. Victim-1 resumed using a personal Facebook account, which is public and visible to other Facebook users. In or

about early November 2014, U.S. Victim-1 began to receive Facebook messages from an account used by an individual not named as a defendant herein ("CC-1"). The account's profile page contained a photograph of the individual purported to be associated with the account (i.e., CC-1), whom U.S. Victim-1 recognized as one of the guards who had been responsible for detaining U.S. Victim-1 during U.S. Victim-1's captivity in Somalia. From my review of the Facebook communications between U.S. Victim-1 and CC-1, I have learned the following:

   a.   On or about November 18, 2014, CC-1 wrote to U.S. Victim-1, stating, "How are you [first name of U.S. Victim-1]. I am ur friend [CC-1]. I wants to speak with u. I am at Hobyo. I hope u are fine. The pirates who held u hostage killed each other over group vendetta and money issues.."[1] U.S. Victim-1 responded to CC-1, informing CC-1 that U.S. Victim-1 remembered him.

   b.   In the months that followed CC-1's initial communication with U.S. Victim-1, CC-1 sent U.S. Victim-1 numerous photographs of individuals. On or about December 12, 2014, CC-1 sent U.S. Victim-1 a photograph of an individual, accompanied by the message "This is basher yare." U.S. Victim-1 replied that he/she recognized the photograph, responding, "Bashko! Yes, how is Bashko? I hope he wasn't killed in Galkayo," referring to Galkayo Firefight, i.e., the "vendetta" that CC-1 had previously described. CC-1 responded indicating that "basher yare" had not been killed, but was in fact in "Galkayo now."

   c.   Based on my review of the above-referenced photograph sent by CC-1 to U.S. Victim-1 on or about December 12, 2014 (the "YARE Facebook Photo"), it appears to be the same photograph that U.S. Victim-1 previously identified as depicting BASHIR YARE, a/k/a "Bashir Abdullahi Yare," a/k/a "Bashir Abdi Yare," a/k/a "Bashko," a/k/a "Bashir Hassan Kulmiye," a/k/a "Bashir Hasan Kulmiye," the defendant, see supra ¶ 12(a).

   14.   During the time that U.S. Victim-1 was held hostage in Somalia, the FBI received reporting from a

---

[1] I know from reviewing open source reports surrounding the release of the U.S. Victim that CC-1's account is consistent with reports that several of the U.S. Victim's captors were killed in gunfight stemming from a dispute over how to divide the U.S. Victim's ransom (the "Galkayo Firefight").

confidential source ("CHS-1"),[2] as part of the U.S. Government's effort to secure U.S. Victim-1's safe return.  Based on my review of reports of information provided by CHS-1, I have learned, among other things, that:

        a.   In or about July 2014, CHS-1 reviewed the YARE Facebook Photo[3], and identified it as a photograph of BASHIR YARE, a/k/a "Bashir Abdullahi Yare," a/k/a "Bashir Abdi Yare," a/k/a "Bashko," a/k/a "Bashir Hassan Kulmiye," a/k/a "Bashir Hasan Kulmiye," the defendant, whom CHS-1 identified by his true name as "Bashir Yare."  According to later interviews with CHS-1, CHS-1 was a close acquaintance of YARE.  CHS-1 knew that YARE was a part of the guard force for U.S. Victim-1 who was directly responsible for guarding U.S. Victim-1.  CHS-1 described YARE as one of seven individuals who were the most prominent guards responsible for U.S. Victim-1's detention.  In addition, CHS-1 reported that YARE travelled with U.S. Victim-1 between different locations in Somalia where U.S. Victim-1 was held.

        b.   In or about October 2014, CHS-1 reported that YARE had received approximately $16,000 from the ransom that was paid for the release of U.S. Victim-1.  CHS-1 also reported that YARE had been present at the Galkayo Firefight, stemming from a dispute over the distribution of the ransom proceeds.

---

[2] CHS-1 has been a paid FBI confidential source since approximately May 2014.  Information provided by CHS-1 has been deemed reliable and has at times been corroborated by independent evidence.

[3] Although CC-1 did not transmit the YARE Facebook Photo to U.S. Victim-1 until in or about December 2014, it appears to be the same photograph as the one identified by CHS-1 as depicting YARE in or about July 2014.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of BASHIR YARE, a/k/a "Bashir Abdullahi Yare," a/k/a "Bashir Abdi Yare," a/k/a "Bashko," a/k/a "Bashir Hassan Kulmiye," a/k/a "Bashir Hasan Kulmiye," the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

FURTHER, the Government respectfully moves for the Complaint and arrest warrant to remain sealed – with the exception that the Complaint and arrest warrant are unsealed for the limited purpose of disclosing the existence of or disseminating the Complaint and/or arrest warrant to relevant United States, foreign, or intergovernmental authorities, at the discretion of the United States and in connection with efforts to prosecute the defendant or to secure the defendant's arrest, extradition, or expulsion, or as otherwise required for purposes of national security.

/s authorized electronic signature
_____
AMANDA MEYER
Special Agent
Federal Bureau of Investigation

Sworn to me through the transmission of this Complaint by reliable electronic means, pursuant to Federal Rule of Criminal Procedure 4.1, this

_20_ day of April, 2021

_____
THE HONORABLE SARAH NETBURN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK